On behalf of the Adelaide, Ms. Sally Switz. Good morning, Your Honors. May it please the Court, I represent Jeffrey Waites. The issue in this case is whether Mr. Waites may have been assessed a $200 DNA fee when his DNA is already in the state database in Springfield. This same issue is currently pending before the Illinois Supreme Court in the case of People v. Marshall. As I noted in my reply brief, the appellee's brief in Marshall was filed January 10th. And presumably, on information belief, the reply brief was filed by mail yesterday, according to counsel. The decision in Marshall will most likely be dispositive of the issue in this case. And therefore, we ask Your Honors to hold this case in abeyance until Marshall is decided. Well, let's talk about Marshall. Marshall puts a lot of emphasis on the wording in the statute, 5-5-4-3, where it says, shall, regardless of the sentence of disposition imposed, be required to submit specimens. Your Honor, I think the recent case that I cited as additional authority, People v. Rigsby, addresses the statute very well and takes issue with Marshall and Greer and Hubbard's reading of the statute. Well, Rigsby goes and pulls in the administrative code as well. Right. Right. But Rigsby does that because the Rigsby court points out that even the cases that go contrary to Your Honor's decision in Evangelista admit that the statute is silent as to whether offenders must submit additional samples upon every qualifying conviction. They find that that silence creates an ambiguity. And then they look at the implementing regulations. And those are very interesting, and the Rigsby court made two important points about those. And with Your Honor's indulgence, I would like to focus on that this morning. The Rigsby court looked at the implementing regs. That section instructs each agency as to the collection of DNA samples. But each section is qualified with the language if the qualifying offender has not previously had a sample taken. So it ties the collection to the offender, not to the conviction. And, in fact, the very first line of those implementing regs is also very telling. It states, subsection A states, when a person becomes a qualifying offender, the state's attorney shall, at the time of sentencing, request that the court issue the order for the DNA. This, again, ties the collection to the person and not to the conviction. It doesn't say upon conviction of a qualifying offense. How do you address Justice Lankin's dissent where she distinguishes those regs from the statute? I believe that the justification or that in her dissent, the justice looks at or adopts the cases of Marshall, Gray, and Hubbard and the rationale of those cases that say that the statute, that there's legitimate purposes for multiple collection. But I believe that the statute is not being interpreted correctly. But she distinguishes these administrative regs by saying that those regs have to do with when somebody's been transferred from one agency to another, the agencies that are charged with collecting the DNA, Department of Corrections, Sheriff's offices, and things like that. I thought she distinguished those by saying that when somebody's moving from one, from a jail to DOC, DOC doesn't need to take care of them. But I don't believe that those regs limit that, especially when you consider paragraph A, which says when a qualifying offender, when a person becomes a qualifying offender, then you collect the DNA. I believe that that language combined with the subsequent subsections in which they say if his DNA has not previously been collected, I believe if you read those two together, it's clear that, especially when the language ties it to the offender and not to the conviction. And I think that the common sense approach which this court took and the parties took, basically, in Evangelista, has been complicated by some of the cases that have cited reasons why a duplicate sample may be needed. And then they've read that in those justifications into the statute itself. And there's nowhere in the administrative regulations or the statute that talk about reasons for additional samples. I mean, when Justice Karnasas and his majority talked about it, he put it in speculative terms, didn't he? And, Justice Hutchinson, I think that there's been, there was talk of a need for fresh samples because of the need for fresh samples expungement or new technology. But I believe that paragraph I-2 of 543 is directed towards those possibilities. First of all, fresh samples, DNA properly preserved, as the court stated in Rigsby, lasts thousands of years. New technology, the possibility of new technology warranting a new sample. Under I-2, it provides that the, if a DNA sample is not adequate for any reason, the state can ask for another sample. So, if there is new technology, then the state can ask for a new sample. Years later. But if, well, if, yes. Is it really? That's where you read the statute? It says under 543 I-2. So some defendant 20 years from now could be asked for a new sample because of new technology? Well, and if there is a problem, as far as if for some reason the legislature felt that I-2 didn't cover that, they could certainly indicate in the statute that due to new technology, the DNA database is being updated. And this gets to my point of, in that circumstance, the legislative intent is to have a complete database. If you're only taking new samples from people who have additional convictions, then you're not going to have a complete database with new technology. Because everybody who's in the database who, you know, hasn't had a new conviction is going to be left out. And the, it's important to understand that. The clerk imposed the fee here not because the DNA was not adequate in the database for whatever reason under I-2. They just imposed it because they do with every conviction. Now, you brought up a good point in citing Rigsby where they say, you know, DNA samples are good for thousands of years. New technology, would you agree or disagree that new technology would be much more helpful in testing other samples to match the DNA with the defendant? I mean, even new technology, how is it going to change the DNA of the defendant who is submitted? Yes, I don't think that the cases that talk about new technology don't indicate what the scientific basis would be for why someone's DNA would be different under new technology or how that would be affected. But again, I think that's covered under 543I-2, that if it's inadequate for any reason, we can take another one. And if that circumstance occurs, that's another issue. But here, it wasn't collected because, and the fee wasn't imposed because his DNA was inadequate. And I think my client's main concern is the $200. His DNA is already in the database. It's not, you know, adding a sample isn't what he's concerned about. I think the state should be concerned about that because it's clear that the clogging up the database is not helpful. You're talking about public policy concerns, if you will. Right. In Marshall, they basically said, you know, that in Evangelista, we really didn't evaluate the case. We really didn't look at it closely because the state had confessed error. What's your response to that? Well, I think that, Your Honors, the reason was because it seemed to make common sense. The state confessed error. The defense made the argument. And I think that this court's common sense approach has been reinforced by the court's decision in Rigsby, which looks at the statute and looks at the cases that have been decided contrary to Evangelista and stated that the justifications for the additional collections just don't hold up. And I think when you further look at the provision in the statute for taking additional samples, if there's a problem with the one that's there, then I think that can be covered as well. Rigsby found that the statute was ambiguous, and one factor that that court looked at, the majority looked at, to resolve the ambiguity was that the cost associated with the DNA was a fee and not a fine. And why would you have to pay another fee if you're not going to give the sample? Well, this court in Long, People v. Long, has found the opposite, that this is a fine to be imposed. So how do you respond to that? Because basically if the legislature tells us upon conviction we're to impose this fine, then we've got to impose the fine. Well, I believe that the DNA analysis fee is a fee, and I have three reasons. Number one, it's designated a fee, which is not controlling, but it's an indication of the intent of the legislature. Furthermore, under paragraph K3A through E, the statute repeatedly states that the money is to be used for the costs incurred in processing the samples and maintaining an update in the database. So the fees don't go into the general fund. And also, as the Rigsby Court noted, the implementing regulations limit the taking of the samples to persons who haven't previously had their DNA collected. If this was a fine, if the legislature intended it to be a fine, then they would keep imposing it. The collection fee is tied to the collection. It's to cover those costs. To cover the costs of that person's DNA being analyzed. And maintaining the database, because that DNA has to stay in the database. But I analogize it, Your Honors, to the difference, say, in a drug case between a street value fine and a lab fee. The lab fee is to cover the costs of determining that it's drugs. The street value fine is to punish them for having the drugs. They're not punishing the defendant for having DNA. They're trying to cover their costs for putting him in the database. And I think that that... We did find it wrong that the statute contains no language indicating that the DNA analysis assessment is to be used to pay for the analysis of the specimen and the particular defendant required to submit the specimen. So in order to buy your argument, we need to abrogate that finding. What's that? It says... Well, under paragraph... Did you withdraw that argument? Yes, I did, Your Honors. I filed a motion. That was an error. And I filed a motion at the beginning of the month, before I filed the motion to cite additional authority. Because I believe that was an error. And I apologize to the court for that. But the K3A states that it is to be used for costs incurred in providing analysis and genetic marker categorization as required by subsection D. So if, in fact, we adopt this rationale, then it's not necessarily that Long is inaccurate in considering everything. It only considered the statutory authority as opposed to the regulative authority. No, no, this was in the statute. This is the statute. Right. As far as the costs incurred. Okay. And as I stated in my reply brief, the case law on this is definitely in a state of flux. But the Supreme Court does have this same issue before it. And hopefully it will be resolved in the defendant's favor. And consistent with this court's initial take on this issue, that common sense dictates that a person's DNA doesn't change. And the database doesn't need multiple samples of the same thing. And the defendants don't need to be repeatedly charged $200. For these reasons, Your Honors, we ask that you vacate the DNA order. Thank you. Thank you. Good morning, Your Honors. Good morning. May it please the Court. Respectfully, given that we conceded this issue initially in People v. Evangelista, I can understand the surface appeal of the defense argument. And that is that we all seem to know something about DNA, and we all think we kind of have an idea that if it lasts forever, why would you ever need it again? And when you fall into that, you start really to do exactly what we're not supposed to do when we're interpreting a statute. And that is to go behind the clear and unambiguous words to say, we think the policy must be. In other words, to define a policy and then say, so now we've got to look at these words. Well, these words don't really deal with that. So we have to change the words somehow. We have to read a limitation in there that's not there. And that's what we fell into when we conceded it. And that's what the defense is still arguing. If a defendant commits five burglaries, okay, and is charged, say, five different times, all right, and is charged with five different indictments, separate indictments, with five different burglaries, comes before one judge, gets a five-year concurrent sentence, pleads guilty, I mean, is your argument that DNA must be taken from that defendant five times and that defendant must be paid the $200 fee five times? I'd have to look at the statutory language to determine how to answer this exactly. I haven't thought of that through. But on the other hand, I would say that, no, I don't really believe that's probably the way the statute wording would require. Well, the statute says upon conviction, the statute says upon a conviction for a felony offense, the defendant must pay this. And my question gets to the fact that, you know, legislation were to find that the legislature didn't intend an absurd result. And I think that would maybe be an absurd result if the defendant is supposed to give one bugle swab, then another one, then another one five times. I mean, that wouldn't make a lot of sense. No, that wouldn't make a lot of sense. Certainly, it would seem to me that, and I don't have the language right in front of me, that when they say that a person, let's see, something to the effect that a person convicted or found guilty of any offense classified shall be required, you know, you're right. I would think that that would mean that in a single case that that person comes through, if they qualify under that, then they would take a sample. I mean, excuse me, they would submit a sample. Wouldn't this be similar to a sex offender who's arrested and charged as a, he's arrested, charged, and convicted of a sex offense. He has to register as a sex offender. Right. So then he's out, he commits another offense. Does he have to re-register as a sex offender? I'm not sure under that statute, Your Honors. I don't believe so. I believe once he's there, he's there. But this is a little different, you know. Well, how is it any different in Justice Birx's example? He's saying if he gets five arrests at one time and he's before one judge. How about if he's arrested for burglary in 84? He's arrested for burglary again in 86. He's arrested for burglary again in 88. He needs to take, give a DNA sample in each of those cases. Yes, he does. I mean, I do believe that. For what purpose? You have a DNA example. You have a DNA sample. How is it going to change in those years? Because, again, I think what we're doing by this discussion, even, is to say that we have to somehow come up with the understanding of DNA, how it works, whether new analysis. And I know defense counsel talked about this. But it's not a matter of does your DNA change. The answer to that is probably no. But the answer might be laying more in what if there's, you know, maybe there's some type of understanding by the legislature that things can happen. DNA can get inadvertently destroyed, perhaps. Perhaps there's new analysis which would break it down in a different way. And maybe perhaps once, and none of this is known by me, and I would expect it's not known widely by any of us, maybe perhaps when the sample goes through the original analysis, you know, a part of that then would make it more susceptible from whatever they used to analyze it to other changes, you know, that are done by a new technique. Well, let me ask you this. You have a DNA sample or you don't, like you said, or could have been destroyed. For a public policy argument, as counsel argued, you know, you're going to overburden the crime lab, which is already currently overburdened with taxing or taking people's DNA. They're taxed. So instead of working on a murder case that's currently being investigated and doing that DNA testing, we're going to be burdening them with taking DNA from every person who's already submitted a DNA test, correct? Is there not a way where perhaps the probation officer, if they're sentenced to probation, or the prison, if they're sentenced to prison, can call the database and say, do you have this guy's DNA? And if they say yes, it's there. And if they say no, then they take it again. Wouldn't that resolve your issue? Well, it might resolve it if that's what it calls for, but we're not here to question what the legislature has provided. I mean, if the law is clear, we're not here to say, well, we think there's some trouble with that or we think they shouldn't have done this. We're here to implement what's clear and unambiguous. Well, Rigsby says it's not clear and unambiguous. Rigsby says we need to look at the administrative code. Right, and I totally disagree with Rigsby, and here's why. Rigsby says that it's not unambiguous, and I believe the way they looked at it is to say that the fact that it does not, I think the way they argue it is the fact that it does not provide for somebody who has already submitted a DNA sample means that there's an ambiguity. Well, if that's taken through a logical argument in any statute, what that really means is that any time we can come up with some type of possibility of, gee, do these people fit under something which seems to include everybody, and say, well, they didn't accept them, so I guess the fact that they didn't accept them means that there's an ambiguity. The fact that they didn't accept them means that they're included. That's what that means. That doesn't create an ambiguity because they did not accept somebody or negate an exception and say we've considered these people and we are not accepting them from that. There's no need to do that. The statute's clear. It says if you are convicted of these felonies, anything that's classified as a felony under Illinois law, you shall be required to submit specimens of blood, saliva, or tissue. It couldn't be clearer, so I don't see how that could possibly be an ambiguity unless you expect the legislature to foresee every possible argument of an exception and then to address it and say we've taken that into account and it's not an exception. Well, I asked counsel that I felt that in Marshall there was some introduction of speculation of what could happen to this sample. The logical one, and not so speculative, would be expungement. I mean, I can live with that one. Correct. The other one, well, you know, things might change. Well, we've already talked about, well, what if they do? Does that mean the DNA is going to change? But on page 7 of your brief, I think you're making a similar, or at least I want you to explain this statement. Taking the sample from repeat felony offenders serves a vital purpose, as does assessing $200 every time an offender is subject to the submission of the DNA. So there are two issues there. Aren't you, what's the vital purpose? Well, the vital purpose, this is exactly what we've talked about, the fact that a fresh sample might mean something, and I don't think we're the experts to say. That's just as speculative as Marshall. Well, it is, but the thing is, again, what we're doing is we're speculating. I mean, they're speculating just the opposite when you go to Grisby and say, well, you know, it can last forever, so there's really no good reason. I mean, we're getting behind the words of the statute and saying that we know that there are no other concerns here. Of course it's going to cost money to do this, to take it multiple times, but we presume from the clear language of the legislature that they've considered that and determined that it's a cost that they're willing to undertake. And in terms of the fine attached to it, that money then goes into the database as well as other, I don't have it in front of me, but the other, you know, to keeping up the DNA database as well as, you know, for other costs. And that's certainly an important function, and so that also is vital. I mean, it might not be part of this record, but how many of those do they actually collect? Well, that we don't know. And that's a rather significant issue, I think. Well, that's getting to the regs. And the way I would address the regs, again, is that's going behind. Whether DOC does or does not collect it, if they don't collect it, it may be that they are actually not understanding the statute themselves. That doesn't mean that the statute doesn't provide this. They're implementing their regulations, and I found a site for this. It was obviously in the Grisby case. It came up as additional authority. And I said the regs cannot expand or limit the statute they enforce. So we would suggest that their regulations are given no weight if they're inconsistent with the plain statute of the language. And I have a site for that. It's Keene v. Walmart. Well, the way, I mean, Judge Burke asked earlier that doesn't, don't the regs deal with the fact that a person is being transferred from one entity department to another? Well, in fact, that's what happens when someone is transferred from a county jail to the Department of Corrections, isn't it? Well, right. Or from one place in the Department of Corrections to another place in the Department of Corrections. They're transfers. If we're going to use the straight-out, plain language, a transfer is a transfer. Right. So I guess what the dissent is saying is that it goes towards transfers, but it doesn't go to the initial conviction or something and somebody being brought into, you know, a jail or the Department of Corrections. Well, where are they going to be coming from if they're not coming from a jail on aggravated, well, on most felonies? Well, no, I think what the dissent is saying is that the only time that those provisions, which talk about if it hasn't already been taken, that sort of implies that it hasn't already been taken by another agency when they were first brought into the jail or where they were in the jail once they were convicted. And I think that's the way that the dissent is reading that. And I think that's appropriate. I think that's another reason why the regs, even if you went, you know, and looked at them for their interpretation, I don't believe that that makes a difference as far as their language about, you know, if the person has not already had it taken. But beyond that, and actually more importantly, I think, again, you've got to go back to look at the language. There's no exceptions. It's written the way it's written. Now, if the legislature doesn't mean that, then certainly and has, you know, made a mistake here, then certainly they can correct it. But it's not for us to go beyond something that has no limiting language at all and to say, well, it doesn't seem to make sense to us. We think that it should have limiting language because this or that, you know, costs or because it seems like there could be instances where we've been taking it, you know, too many times from one particular person or whatever or the DNA doesn't change. But I think there are a lot of things here that we don't understand either, policies. We're not scientists. We're not looking at maybe, you know, the administrative costs, that type of thing, the way that the legislature presumably has. So our argument is just that if you have a plain, unambiguous statute, to go to the regs, you know, to go beyond that is simply inappropriate. And I guess the, you know, when I look at the answer in Rigsby to the hypothetical concern in Marshall, it really says that it's looking then at what they've discerned to be the policy and said, oh, well, you know, in certain circumstances, certainly we wouldn't want it taken more than once. But then again, if something's happened and it's been expunged, well, then we would want to take it more than once. They're reading all sorts that they're actually reading a limitation in that isn't there. Did Marshall do the same thing? No, I'm saying Rigsby. I know what you're saying. But didn't Marshall read a lot into it, too? Didn't it speculate a lot as well? Well, it's going with the one exception which is really provided for, which is under the statute, which is that there could be an expungement. And when you look at that, there, you know, clearly there could be an expungement. And if that happens, you can imagine that the situation could arise and that that would be a loophole of sorts. Do you read Marshall at all? In some portions of Marshall, do you read into it that it's almost given discretion to the trial court to make a determination whether or not they would ask for it? No, I did not read that into that decision at all. Well, the Unander case seemed to give the court some discretion. Yes, it did. Yes, the Unander case I was a little puzzled by, honestly, because it seemed to say under evangelista, but then it didn't seem to really rely on evangelista and said or because of the language seemed to say that, you know, if the court conditionally says it, then, in fact, you know, it's really a matter up to the court. If they say you don't have to have it, if you've already taken it, then the court can decide that. And I would totally disagree with that. I mean, I think in my brief I suggested that, and Rigsby actually is another case that determines it this way, if we're looking at forfeiture and saying there's no forfeiture because we're talking about a statute here and if it's the order itself is outside or it's being enforced in a way that's outside of the statute, then it's void. Well, then certainly in this case, if we have a conditional order and the statute itself requires multiple submissions, to the extent that it's conditional, that would be void. Counselor, we don't seem to have a timer here all of a sudden, so I think you're... Are we doing it? Yes. Oh, thank you. I'm looking over there. Okay, so I think it's time. Good sign. I have one more question. Counsel is requesting that we hold this in abeyance pending the decision on Marsha. Yes. Your position on that? I actually believe that that would make sense. I did ask and find out that it's most likely to be argued in March, so that will be coming up very quickly. You know, we thank you for the argument today because we feel it's important to look at this anew and to realize that there is a reason really to hold it in abeyance, not to follow Evangelista. And I guess just one more thing, and I just thought in terms of your question originally, Justice Burke, there is, you asked about taking it multiple times for one offender if there's like several convictions, you know, at one time. And I would just say that there might even be a reason for doing that, and the reason for doing that would be more to do with the fine, which is going to, you know, to, and the fine is tied to the taking of the sample, which certainly goes to this DNA database, which is very vital to law enforcement. And thank you. Ms. DeWitt. Thank you, Your Honors. I don't believe that the statute is clear. In the case of People v. Hubbard, which is contrary to Evangelista, the court states, in Greer and Marshall, we noted that the statute does not expressly require a fee for every felony conviction, but also that nothing in the language limits the taking of DNA samples or the analysis, assessment of the analysis fee to a single instance. That's what Rigsby's point was. It doesn't say. And I believe that when you look at subsection I-2, which says that if a sample is not adequate for any reason, another sample can be ordered, combined with the implementing regulations in which it ties the collection to the offender and says when a person becomes a qualifying offender, not upon conviction of a qualifying offense, and then also instructs agencies to only collect it if it hasn't been previously collected, I think that when that's viewed in light of just common sense, that once a person's DNA is in the database, it's there. Absent circumstances that can be covered by I-2, I think that a single collection is appropriate and a single collection fee. Now, Your Honor raised the concern about the expungement, which was brought up in Marshall, but I believe that this is also covered. The state police is in charge of the database. The state police, they're the keeper of the records of a person's prior convictions. If there is an expungement order, they are aware instantly whether there are other qualifying convictions. They can either, I think if this provision, I-2, is broad enough, they can either just say we're transferring the label for this collection, this DNA sample, to the qualifying conviction, or they can say to the defendant, your sample is no longer good for whatever reason and we need a new one. And I think those are circumstances that are provided for. The administrative code talks about, as you said, multiple samples or duplicative DNA samples. Who do you suppose, and I guess this is asking speculation, or maybe you know, where do they determine whether or not a sample is already taken? Do they just ask the defendant or do they check the DNA database? Do you know? The clerk, the circuit clerk, before they assess the fee. No, I think she's talking about the agencies, if they follow the regs for the agencies. How does the agency know? I don't have that information. I know that how I found out, we called the person who was in charge of keeping those records, and we supplemented the record with that information. And it seems like that's the kind of information that either a defense counsel or a prosecutor or the person who does the PSI can determine, yes, the DNA has been collected, or no, it hasn't. And in fact, in some records, that has occurred. And in fact, in this case, the minimus explicitly states, DNA imposed if it hasn't already been taken. I don't think it's that much more of an onerous burden to find out whether or not it actually was. Thank you, Your Honors. Thank you. Thank you. All right. Thank you for your argument, and we will consider both the request to hold as well as the substantive issue. A decision in this manner will be made in due course.